Thank you, your honor. May it please the court. The first issue this morning is whether the district court erred in refusing to find commonality and typicality. All the cases tell us that commonality and typicality tend to merge. So the issue really is commonality. That's what the district court really analyzed. Commonality requires that there be a central common issue which is the answer to which is likely to drive the resolution of the case. In this case, a central common issue likely to drive the resolution of the case is whether if a person sits more than four months in jail awaiting competency restoration to start after having been ordered to competency restoration, the person suffers a due process violation in the absence of a reason specific to that individual why more than four months are needed. That question is common because we've got all these people who sit more than four months without starting competency restoration and there's no actual evidence that there's even a single person who cannot start competency restoration within the four months. Where does the four months come from? I get it that it's South Dakota law, but how do we get into a situation in which the district court was... I know this is beyond the scope of the specific question, but we've now gotten into a situation in which the district court has constitutionalized a state statutory requirement. I don't know how we got here. Well, we get there through Jackson v. Indiana, your honor, and Jackson v. Indiana does not set a line because there's no evidence in the case. Precisely. And so that's the problem. I think you've just identified the problem, which is that if you're going to do the reasonable length of time, which is the Jackson standard, then it ends up being a facts and circumstances, which means you cannot certify the class. I don't think that's what Jackson v. Indiana requires because Jackson v. Indiana itself tells us the court does not have the evidence needed to set any kind of standard. In this case, we're 50-some years after Jackson v. Indiana. We presented all the evidence that exists as far as the facts, how long people wait, what South Dakota law is, how long it takes to get a person ready to go to competency restoration. It was based on all those specific facts that we presented. I thought the four months pretty clearly come from that later statute, that subsequent statute that I can't remember. I've written it down somewhere, but that makes a reference to four months. Maybe it's the time when there's an initial commitment to the attorney general at the preliminary stage, and it's got to be done in four months. Yes. I thought it was, at least one of these cases or somewhere, there's a reference to that as being a rational... That's the federal standard, Your Honor. The state standard happens to be exactly the same. Four months... Why? There's a pretty good inference. Why? I'm sorry, Your Honor? Pretty good inference. They borrowed it from the federal standard. That may be. A case right on point is Donnelly from Ninth Circuit 2022 says four months due process between beginning of order for competency restoration and when competency restoration must begin. You've got the facts and... What I'm really getting at here is the district court may have reached the right answer on certification through the wrong route, which is to say that I still can't... The four months is just sort of picked out of the air. I get it. It's in the statute, but we don't constitutionalize statutes. I get it that you think you presented evidence, but my point is, is the underlying standard from Jackson is in itself extremely fact-dependent. You saw this with the district court's reasoning, right? One person was... There was two people that were not a constitutional violation and one person there was, even under the district court standard. I don't know how you certify that class when Jackson itself, the key case, says how fact-dependent it is. It's fact-dependent, but we presented the facts. Let me just say what those were very briefly. First of all, the sheriff testifies how difficult it is for mentally ill people when they just sit in jail. Testimony is uncontested. Second of all, the state defendant testifies that at most they need seven days to get the records to determine where someone will go. Third, Yankton, where these people go, is a one-day drive from anywhere in South Dakota. Within eight days you can get the person there. Finally, there's an escape hatch if more than four months goes by. The problem with not having a line is that nobody knows what the standard is. Had Judge Schreier just said reasonable, that doesn't answer anything. That's not a basis to certify a class. No one would know what it meant. Is reasonable ten months, eight months, two months? Who knows? There has to be a line, just as we saw the U.S. Supreme Court draw in County of Riverside, where starting with Gerstein v. Pugh in 1975, it says reasonable time to an impartial judicial hearing. By Gerstein v. Pugh, it says 48 hours in the absence of exceptional circumstances. It's the facts and the necessity of drawing a line and taking into account the situation on the ground in South Dakota, which the court in Jackson did not have. You think then that even though the Supreme Court felt like they needed to leave it completely open, totality of the circumstances, that we have enough evidence here to say definitively that four months is the absolute line and we should not cross that line for constitutional purposes? Two answers, Your Honor. First of all, Jackson tells us specifically we don't have the evidence so we're not going to set a line. Oh, I get that. And then in this case, the district court says four months except if there's a reason specific to the individual so the state can always come in and say, you know, this is a Hannibal Lecter situation. We've got to build a new cage for this guy. We need more than four months. And doesn't that undermine commonality because we need to know if we've got a Hannibal Lecter type situation or somebody who's lesser than that? I mean, doesn't that sort of undermine your commonality for your class? Your Honor, it doesn't undermine commonality at all because commonality does not mean that every issue must be the same for every member of the class. It only means there has to be a central common issue. There are always individual defenses or potential individual issues in any class action, always. That's the nature of Rule 23. But even if we were looking at Barfield from this court in 2017 says, do the aggregation-enabling issues outweigh the aggregation-defeating issues? And clearly they do here because all the issues are aggregation-enabling for people who wait more than four months. The potential aggregation-defeating issues, if you have the Hannibal Lecter problem, that's surely hypothetical. In five years of this so clearly there's predominance even if we needed it, which we don't because this is not a 23b3 issue. If the court reverses on the issue of Judge Schreier finding no commonality and typicality, I have a question where that leaves us. My question is, and where I think this leaves us, is that Judge Schreier did not reach the issue of class certification under 23b1 or 23b2. So even if this court reverses on commonality and typicality, we won't know whether she would certify a class action. So we won't know whether the case is moot because there's no class certified. Because of that, my guess is that it has to go back to her to address the remaining class certification issues so we know whether or not the case is moot, so we know whether or not there's a case or controversy. So it would be your position that if we affirm the district court's determination on class, that would moot the case? Yes, that's true. I think that's just absolutely true. And the reason is because the class action exception would no longer apply. If you don't have a class, then you don't have live plaintiffs sitting in the class to actually give a case or controversy. That's true. So I'd like to turn very briefly to the 1983 versus habeas issue that the defense has raised. And the key word here, there's one key word, which is the word necessarily. And I say that because Nance versus Ward in 2022 from the U.S. Supreme Court says the difference between 1983 and habeas is habeas is mandatory only if the result of the case will necessarily result in invalidation of the conviction or a shorter term of confinement. Judge Schreyer applies that test here and she finds that no, a faster commitment will not necessarily invalidate the conviction or result in shorter confinement. It just means treatment to try to restore competency will begin sooner. And the reason that's critical is because the person may ultimately not get out of jail faster. Competency restoration could fail. Competency restoration could occur and then the person could relapse and go back into competency restoration. Competency restoration could occur and then the person could get civilly committed. Any of those things could happen. So the necessarily requirement is not met. There are two U.S. Supreme Court cases that I think make this undeniably clear. The first is Wilkinson from 2005. You've got these prisoners. They say the parole procedures of the state are unconstitutional and we want a faster parole hearing. And the state says, well, you've got to bring that in habeas because you're trying to get out of prison. And the Supreme Court says, no, this is a proper 1983 case because even if you win, you won't necessarily get out of prison faster. You will get a faster parole hearing, but you might lose your parole hearing. So you won't necessarily get out faster, so 1983 is proper. And the second case, which again makes this, I think, undeniably clear, is the Skinner case from the U.S. Supreme Court in 2011, where prisoners want DNA testing and they sue for it under 1983. And obviously, the purpose is to try to show their innocence so they can overturn their convictions and get out of jail. Well, the U.S. Supreme Court says, this is a proper 1983 case. The state's arguing it's got to be habeas because you're trying to get out of prison. But the U.S. Supreme Court says, you could get your DNA testing by winning this case. It might be inconclusive or it might show that you are, in fact, guilty. So the necessarily test is not met accordingly. It's a proper 1983 case. For all those reasons, the necessarily test is not met here because it is an attempt to get faster treatment, but faster treatment does not necessarily lead to getting out of prison sooner and it certainly does not lead to overturning a conviction. I'm going to reserve the balance of my time. I appreciate the Court's attention. Thank you. Mr. Dreesen. Thank you, Your Honors. May it please the Court. My name is Drew Dreesen. I'm here on behalf of the Chief Administrator of the South Dakota Human Services Center and on behalf of the state's Secretary of Social Services. This case offers three pathways to what's ultimately the same result, dismissal. The first pathway is dismissal on the basis that the claims are moot. And that is the pathway that this Court would have to first travel before it could reach the others. You're going to have to slow down and speak up for me. And that's the first pathway this Court would have to travel if it were to reach the other two. The other two possible pathways... Say what that first one is again. The first one is dismissal on the basis that the case is moot. The second pathway that could be traveled is that the detainees pursued this claim as a 1983 action when the proper tool is a habeas action under 22-4C1. And the third possible pathway on which this thing could be resolved is dismissal on the merits. Because of this case, because this Court has an unflagging obligation to assure itself of its jurisdiction, I think it makes sense to start with the mootness analysis. Because this Court has an unflagging obligation to assure itself of its jurisdiction, I think it makes sense to start with the mootness analysis. Okay, what's the third pathway? I assume it's affirm the district court on... The third possible pathway is dismissal on the merits of their constitutional claim. This is the unusual case where mootness is intertwined with the class action analysis. No one here disputes that this case is moot on its face because none of the detainees have any relief available that would run directly to them. The only question is whether one particular exception to mootness, the class action, the inherently transitory class action exception applies. It does not. As the district court observed, this case is not certifiable. It's not certifiable for the reason the district court observed, which is that this case lacks commonality and by the same general token typicality of the class. That's true whether one accepts, for purposes of analysis, that the district court's four-month standard is correct. It's true whether the court agrees with us and applies the shocks to conscience standard. And it would be true if you applied a more abstract reasonable than standard based on Jackson. Counsel, how does the four-month term operate? Is it four months from the time of incarceration or four months from the time of the beginning of treatment? So, the four-month, we arrived at a four-month standard in kind of an unusual pathway, as I think was hinted at in the previous. Well, first, answer the question. How does it work? The four-month pathway, my understanding is it works from the, it's the start of treatment is the trigger for when that four-month period begins. The 11th Circuit at least has held as much with respect to the federal statute. But the claim here is for four months from the beginning of detention. That's correct. And I think that's part of the oddity of how we arrived at a four-month standard is that the four-month standard is that the district court relied upon, which comes from a Ninth Circuit case called Donnelly dealing with the federal statute, is dealing with the period from detention, or excuse me, the period from treatment onward. There is no statutory four-month standard with respect to the period in between the start of detention and the start of treatment. Regardless, the Donnelly court, through a kind of a, by effectively kind of constitutionalizing a statute and then looking back to that same statute, concluded that the four-month standard applies the whole, by the whole token. That's what the district court did here, ultimately reasoning essentially that at four months, kind of by virtue of looking to the federal statute and its South Dakota equivalent, we wouldn't expect it to last longer than four months. So I want to ask, so I don't like constitutionalizing statutory standards, particularly when they're not on point. They govern a different period. But assuming for the sake of argument that the four-month period is absolutely 100% correct, that four months, my understanding is the way it works, the way you just explained, it was four months from ordering the treatment to getting the treatment. Anything more than that is sort of presumptively unconstitutional. If that's all we're looking at is the four months, why can't you certify a class? Why isn't there commonality as to that single issue? I think, so there's two points. One is the way the district court conceived of its standard is that it's not, everything up to four months is presumptively unconstitutional. You can't tell whether anything is unconstitutional until you delve into individual circumstances. And the court articulated some possible scenarios that would qualify under that standard. That list didn't purport to be exclusive. And I think as the litigation proceeded, it kind of was exposed that there probably are other circumstances that would fit the bill. You could, in theory, at a very superficial level, I'll grant you, frame the question in the terms that my colleague on the other side articulated. But the resolution of that question, which is what Dukes and its progeny require, turns on all manner of individual circumstances in every case. And resolving the superficial question is not apt, I don't think, to drive the litigation forward. Is that because of sort of the Hannibal Lecter question? How many people are in the beds at a particular time? I mean, if you have an overload of 30 people and people are waiting in line, you just don't have that many beds. There's that. Or is there 10 beds open and they're just waiting around? I mean, is that sort of the point? Is that there's a lot of different things that can play a role as to whether or not it's reasonable? I think so. And you don't have to go, I'll say you don't have to go nearly as far as a Hannibal Lecter scenario to come up with a circumstance in which it would be reasonable, even under the district court standard. One of the three plaintiffs here, Archambeau, it's not fully reflected in the record because opposing counsel agreed to stipulate his case away. He actually, the effort to begin giving him competency restoration treatment began within that four-month standard. And then his medical records turned out to show that he had actually refused to accept treatment for three additional weeks, which pushed it outside of the four-month standard. And so that's why originally when the district court at summary judgment concluded he was still in the case because it looked like on paper treatment hadn't, well, it was the case that treatment hadn't started until outside four months. It actually turned out to be the case that he'd actually just been refusing it for three weeks in a jailhouse setting, and they're not equipped in a jailhouse setting to offer that kind of treatment over the objections of a detainee. There are infinite other scenarios I think you could come up with in which case it would, in every case the individual resolution of the question would resolve, would be dominant in this circumstance. I think the court could also, if it was so inclined, could also reach the 23B question. Opposing counsel's right that the district court did not reach that question because it didn't have to. But I think it's well recognized in this circuit that the court is free to address a purely legal question in the first instance, especially when it was both briefed below and briefed to this court. So I think the court could alternatively rule that the class here just doesn't fit inside any of the recognizable sorts of class actions that are contemplated by Rule 23B. And in large part, that has to do with some of the same circumstances where, for example, just as an example, opposing counsel points to Rule 23B-1A, which concerns cases where there's like a common fund type case that is where the resolution of one potential class member's claims would resolve effectively the claims to the other in an adverse way. That's just not this case. I'm aware of no circumstance in which just the fact of precedent is enough to certify a class under that standard.  Counsel, the two issues you identified, the mootness question and the proper statutory ground 1983 or habeas, those two issues, does it matter which order those are addressed? I would love to tell the court that it doesn't, but I think it does. In Brown v. Presythe, a couple years back, an en banc decision of this court, the court assumed away a 1983 habeas potential problem and then reached the merits. I think that's only possible if the 1983 habeas distinction is non-jurisdictional and the mootness inquiry is jurisdictional. So I think it would have to be resolved first in order to reach either of the two grounds we articulated here. If the court, however, is persuaded that it has jurisdictions, the claim should still be dismissed. Detainees opted to pursue their claims as a 1983 action when the proper cause of action here is a 2241C3 habeas action. Habeas is the exclusive remedy for those who are challenging the fact or duration of their confinement, and I don't think this court needs to look any further than the detainee's complaint to see that that's exactly what they're doing here. In their complaint, they say that the locus of their claim is, quote, that they have been incarcerated for longer than allowed by the due process clause, and they say, quote, they will continue to suffer an injury until their unconstitutional confinement ends. The only way, to my mind, that the court could theoretically bring an end to supposedly unconstitutional confinement, as requested, is to enter injunctive relief, ordering a transfer from the jail, the confinement at the jail, to a state hospital, effectively, for treatment. And a claim of that sort falls squarely within the traditional domain of habeas. And because the detainees failed to exhaust their state remedies before proceeding to federal court, a point which they do not dispute, the claims must be dismissed on that ground. Alternatively, this court could dismiss the claims on the merits. This is an unusual case in many respects, but at its core, what the detainees ultimately are doing here is alleging a substantive due process violation by state executive officials. And I think that both this court and the U.S. Supreme Court have long observed that the traditional test for whether a violation has occurred in that setting is whether it shocks the conscience. The district court obviously came up with its own standard, which we assert is unmoored from that line of precedent and from any other line of substantive due process precedent. But we think— Is there an argument on this that this is sort of a hybrid substantive due process and procedural due process? And the argument would go like this, which is, I know that we've had those involuntary commitment cases that are substantive due process, but the argument would be like you're holding somebody back from getting a trial, right? That you need to restore them to competency. So the longer you wait on that, the longer it is until a particular individual gets due process. And I just wonder whether this is not a shock the conscience test because it's some sort of hybrid between the two. And I'd probably give you a chance to deal with that. I don't think so. I understand where the court's coming from with respect to that. But I think the ultimate issue and what the subject of the complaint in this case is that they've been unconstitutionally confined. It's not that they're not— that they're being delayed from reaching the ultimate disposition of their case at trial or otherwise. It's that they're confined in a place that they say is unsuitable to their particular circumstances. And I think a claim of that sort traditionally sounds in substantive due process. I would point out that the— assuming a substantive due process standard does apply and the shock's the conscience standard is appropriate, the detainees have not argued that they met it, that they can meet it, and with good reason. The undisputed evidence shows here that the state made— that the state did it— did what it could to get each of these three detainees to treatment, including successfully restoring all of them eventually and some of them sooner. And that the wait list that the detainees waited on before treatment is the state's effort to balance its set of competing interests in a circumstance which is traditionally a subject of state— of state's governance, own governance. That is not the stuff of a typical substantive due process violation. Unless the court has any further questions, I'm happy to yield the remainder of my time and ask that the court conclude that this case is moot because none of the three detainees have a continuing stake in the action and there's no relief that could be awarded to them and no exception to the mootness principle applies. And even if this court disagrees, I ask that the court conclude that the case should be dismissed for the other two reasons we've identified. Thank you. May it please the court, I have three minutes and I'm going to address three points that came up during argument. First, your question, Judge Smith, about the four-month period we're talking about. As I heard the answer, it wasn't clear, so I'm going to try to just explain what we're talking about. There are two separate four-month periods here. The first four-month period is between when the state court judge says this person is incompetent to stand trial. I order him committed or her committed to the state mental facility in Yankton, South Dakota. Judge Schreyer's ruling is that once that happens, the state has four months to actually begin the competency restoration. In other words, the person can only sit for four months without competency restoration because that is the purpose of the commitment. The second four-month period we're talking about is under South Dakota law. Once competency restoration attempts begin, the state has four months to restore competency or report back to the court what the status is, like we just can't or we need more time or whatever it is. Those are the two four-month periods we're talking about. As far as the argument that this is a substantive due process or a shock... I guess Judge Schreyer got her four months from the statutory four months for the treatment period. Is that accurate? I don't know exactly where she got it from. She looked at everything, the facts we presented and that state court four-month period. She took that into consideration, just as the federal court did in Donnelly and wound up with the four months to wait before competency restoration begins. As far as the argument the state makes about shocking the conscience, there are seven cases the district court cited at addendum 34 to 35 on this exact subject, how long a person can wait before starting competency restoration after it's been ordered. Not a single one of those cases applies the shocks to conscience test. The state cites two cases of its own at the red brief page 48 to 49. Neither of those cases applies the shocks to conscience test. So there is no case cited by either party that's ever applied a shocks to conscience case to the precise issue here. Should it have though? I mean, should it have? And if not, why not? Well, there isn't... Well, the short answer is Jackson versus Indiana. It doesn't say shocks to conscience. It says nature and duration of confinement must bear a reasonable relationship to its purpose. Nothing about shocks to conscience. So my final point in my final eight seconds is if you reverse the court on commonality and typicality, you will determine whether to proceed to the other issues or whether the case... I'm sorry, may I finish my sentence, Your Honor? You will determine whether the case goes back to Judge Schreier on the other class certification issues or whether you proceed to the other substantive issues. The state makes one argument, which is on the 23B1 and 2 issues, it says, well, those are so clear. And my final sentence is that we disagree as argued at page 5 to 8 of our yellow brief. Thank you very much. Thank you, counsel.